## BRINK *v.* LYONS

*District Court, S. D. New York.* November 24, 1883.

1. SEAMAN'S WAGES — DESERTION — SECTION 4596 — UNREASONABLE ABSENCE — PUNISHMENT.

Where the assistant engineer of a steamer, knowing that she was on the eve of departure, being sent ashore upon an errand, absented himself for an unreasonable period, and the master, after spending a couple of hours in searching through the place and being unable to find him, departed on his voyage, leaving the assistant engineer behind, *held,* that the master was justified in his departure, and was not liable for the subsequent expenses of the seaman. *Held, also,* that the case was not one of desertion under the maritime law, *i. e.*

leaving the ship with the intention not to return, but was an absence from duty without sufficient excuse, the punishment of which, under section 4596 of the Revised Statutes, subd. 2, is in the discretion of the court. *Held, also,* that a sufficient punishment of the seaman in this case was the expenses to which he was subjected, and that he should have wages *pro rata* up to the time of the departure of the vessel.

2. SAME—MEMORANDUM BOOK NOT A LOG-BOOK.

Written entries by the captain in a memorandum book, made a month afterwards from alleged contemporaneous entries in pencil, erased, are not entitled as evidence to the weight of a log-book properly kept, or of written contemporaneous entries.

In Admiralty. Action for seaman's wages.

*Alexander & Ash,* for libelant.

*Beebe & Wilcox,* for respondent.

BROWN, J. The libelant shipped at New York as assistant engineer on the steamer Armsmear, and signed shipping articles on October 30, 1882, to be paid $40 for the run to Jacksonville, Florida. The steamer sailed on October 31st, was obliged to put in at Norfolk, and, after remaining there two or three days, sailed on Sunday, November 12th, at about 3 P. M., the libelant being then ashore and left behind. The respondent claims that he deserted. The libelant denies this, and demands full wages to the end of the voyage, and the value of his effects and expenses of return. The testimony is very conflicting and irreconcilable. The libelant was addicted to liquor; was intoxicated the day before; and, according to part of the evidence, was somewhat intoxicated on Sunday. He says he was ordered by the captain to go ashore at about 11 A. M. to obtain a pipe-fitter to repair a burst, the person previously sent having been unable to obtain one; that the shops were closed, it being Sunday; that he lost no time in trying to find a pipe-fitter, and returning after about a couple of hours, found the ship had left.

The captain testified that he did not send the libelant ashore, except early in the morning, when he went and came back; that after that he had forbidden his going ashore again, as the vessel was about to sail. The libelant denies his being sent early in the morning, and states that it was another seaman who had gone earlier for the pipe-fitter. The narrative of the libelant is so circumstantial that I am inclined to credit his statement that he was directed to go for the pipe-fitter at about 11 o'clock, and that the captain is probably mistaken in regard to the person whom he had previously ordered to go.

Taking all the evidence together, however, I am convinced that the assistant engineer's stay ashore was far beyond all reasonable limits warranted by the errand on which he had been sent. He knew that the steamer was on the eve of departing; he had been ordered to get up the fires at 7 in the morning and had done so. If the libelant went on this errand at 11 A. M., as he states, it was more than four hours before the steamer's departure. In the mean time the captain had scoured the town in search of him, driving in a carriage and calling at numerous places where he thought the libelant might be

found, without success; and, not finding him, the steamer departed on her voyage, somewhat after 3 o'clock.

There are various circumstances, which I need not detail, which satisfy me that the libelant did not intend to desert the ship,—that is, depart with the intention not to return,—but his absence was most unreasonably prolonged. The captain made all reasonable efforts to find him, and he was not required, in my judgment, to wait for him longer. The captain's entries in his memorandum book, a month afterwards, from previous pencil *memoranda*, are not entitled to the weight of evidence of a log-book with proper contemporaneous entries. As the master was justified in his departure, the respondent is not liable for the board or expenses of return incurred by the libelant. Under section 4596 of the Revised Statutes, subd. 2, which it has been held supersedes the provisions of the act of 1790, § 5, (*Scott* v. *Rose*, 2 Low. 381, 382,) it is in the discretion of the court to determine what punishment should be imposed upon seamen for any absence from duty without leave and without sufficient excuse. Absence prolonged after a reasonable time comes within this provision. I have no doubt that the intemperate habits of the libelant were at the bottom of the difficulty. It does not appear that the vessel incurred any increased expense, and I think a sufficient punishment will be inflicted on the libelant by charging him with his own expenses of board and return, and allowing him wages to and including November 11th, amounting to $20. To this should be added $7 for his valise and contents, and $6.50 deducted for advance pay.

A decree may be entered for $20.50, with one year's interest, making, in all, $21.95, without costs. *Johnson* v. *Blanchard*, 7 FED. REP. 597.