# BOWMAN & Another *v.* CHICAGO & NORTHWESTERN RAILWAY COMPANY.

### IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Submitted November 17, 1885.—Decided December 7, 1885.

Plaintiff's declaration contained two counts, for the same cause of action, each seeking the recovery of $1200 from defendant. Defendant pleaded to the declaration, and plaintiffs demurred to the pleas. A few days later plaintiffs amended their declaration by leave of court so as to demand $10,000, and on the same day the demurrer was overruled. Parties then filed a stipulation that in making up the record to this court the clerk of the Circuit Court should only transmit the amended declaration and pleas thereto ; and judgment was then entered for defendant on the demurrer ; *Held,* That it was apparent on the face of the record that the actual value of the matter in dispute was not sufficient to give this court jurisdiction.

The right of a railroad corporation as a common carrier to carry goods for hire is not a right, privilege or immunity secured by the Constitution of the United States, within the meaning of Rev. Stat. § 699, conferring upon this court jurisdiction, without regard to the sum or value in dispute, for the review of any final judgment at law or final decree in equity of any Circuit Court, or of any District Court acting es a Circuit Court, brought on account of the deprivation of any right, privilege, or immunity secured by the Constitution of the United States, or of any right or privilege of a citizen of the United States.

The facts which make the case are stated in the opinion of the court.

*Mr. Louis J. Blum* for plaintiff in error.

*Mr. B. C. Cook* and *Mr. A. J. Baker* for defendant in error.

Mr. Chief Justice Waite delivered the opinion of the court.

This suit was brought by George A. Bowman, a citizen of Nebraska, and Fred. W. Bowman, a citizen of Iowa, against the Chicago and Northwestern Railway Company, an Illinois corporation, doing business as a common carrier of goods for hire between Chicago, Illinois, and Council Bluffs, Iowa, to recover damages for a refusal of the company to receive and carry one thousand kegs of beer from· Chicago to Marshall-town, a city on the line of its road, in the State of Iowa. There are two counts in the declaration on the same cause of action, and in each it is stated that the damages sustained amount to $1200. The suit was begun February 11, 1885, and the declaration was filed about that time. Pleas were filed by the company February 26, setting up as an excuse for not receiving and carrying the goods, a statute of Iowa which made it a penal offence for any railroad company to knowingly bring within that State any intoxicating liquors for a person who did not have a proper certificate authorizing him to sell such articles, and that the plaintiffs had no such certificate, and that the beer which was offered for transportation was an intoxicating liquor within the meaning of the statute. On the 8th of May the plaintiffs demurred to these pleas, and on the 11th of the same month amended their declaration, by leave of the court, so as to increase the damages demanded to $10,000. The demurrer to the pleas was overruled on the same day, and on the 23d of June a written stipulation was filed in the cause, as follows:

"It is hereby stipulated and agreed by and between the respective·parties hereto that, in making up the record of this cause to be transmitted to the Supreme Court of the United

States, the clerk of this court shall only transmit or copy into the record the amended declaration showing the *ad* [*quod*] *damnum* to be $10,000, and the pleas of the defendant to said declaration, together with the demurrer thereto, and the ruling of the court thereon."

Afterwards, and on the 13th of July, judgment was entered in favor of the defendant. To reverse that judgment this writ of error was brought, and docketed here October 21. At a later day in the term the cause was submitted under Rule 20 on printed briefs.

Upon the face of this record it is apparent that the actual value of the matter in dispute is not sufficient to give us jurisdiction. It is now well settled that our jurisdiction in an action upon a money demand is governed by the value of the actual matter in dispute in this court, as shown by the whole record, and not by the damages claimed or the prayer for judgment alone. *Lee* v. *Watson,* 1 Wall. 337; *Schacker* v. *Hartford Fire Insurance Co.,* 93 U. S. 241; *Gray* v. *Blanchard,* 97 U. S. 564; *Tintsman* v. *National Bank,* 100 U. S. 6; *Banking Association* v. *Insurance Association,* 102 U. S. 121; *Hilton* v. *Dickinson,* 108 U. S. 165, 174; *The Jesse Williamson, Jr.,* 108 U. S. 305, 309; *Jenness* v. *Citizens' National Bank of Rome,* 110 U. S. 52; *Webster* v. *Buffalo Insurance Co.,* 110 U. S. 386, 388; *Bradstreet Co.* v. *Higgins,* 112 U. S. 227. As was said in *Hilton* v. *Dickinson,* "It is undoubtedly true that until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all questions of jurisdiction, but it is equally true that, when it is shown that the sum demanded is not the real matter in dispute, the sum shown, and not the sum demanded, will prevail." Here the suit is to recover damages for not transporting from Chicago to Marshalltown one thousand kegs of beer. There are no allegations of special damage or malicious conduct. In the original declaration the claim was for only $1200, and it was not until the case was actually decided, or about to be decided on its merits, that application was made for leave to increase the amount of the demand. Then it was manifestly done, not in the expectation of recovering more than was orig-

inally claimed, but to give color to the jurisdiction of this court. As it stands, the case is not materially different in principle from that of *Lee* v. *Watson, supra*, where, after a demurrer was sustained, the demand for damages was increased, by leave of the court, so as to be in excess of our jurisdictional limit, although it was apparent from the whole record that in no event could there be a recovery except for a much less sum. Under these circumstances, the court did not hesitate to dismiss the cause for the reason that it was clear the amendment was made for the sole purpose of giving color of jurisdiction. Here the stipulation which was put on file, taken in connection with the time it was made, shows unmistakably that the purpose of the amendment was to make a case for our jurisdiction. In *Smith* v. *Greenhow*, 109 U. S. 669, the action begun in a State court was trespass for taking and carrying away personal property of the value of $100, but the damages were laid at $6000. On the removal of the case to the Circuit Court of the United States it was remanded, on the ground that the case was not one arising under the Constitution or laws of the United States. This we decided was error, and, therefore, reversed the order to remand, but, in doing so, remarked that, "if the Circuit Court had found, as matter of fact, that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of reasonable expectation of recovery, for the purpose of creating a case removable under the act of Congress, . . . the order remanding it to the State court could have been sustained." This was said in reference to the requirement of the removal act of 1875, which limits the jurisdiction of the Circuit Courts, under such circumstances, to cases "where the matter in dispute exceeds . . . the sum of five hundred dollars," but it is equally applicable to appeals and writs of error to this court where our jurisdiction depends on the money value of the matter in dispute.

It is suggested, however, that the case falls within the fourth subdivision of Rev. Stat. § 699, which gives this court jurisdiction, "without regard to the sum or value in dispute," for the review of " any final judgment at law or final decree in equity of any Circuit Court, or of any District Court acting as a Cir-

cuit Court, in any case brought on account of the deprivation of any right, privilege, or immunity secured by the Consti-tution of the United States, or of any right or privilege of a citizen of the United States."

The authority for making this a part of the Revised Stat-utes is found in what are known as the "Civil Rights" acts of April 9, 1866, 14 Stat. 27, ch. 31, §§ 1, 3, 10; May 31, 1870, 16 Stat. 144, ch. 114, §§ 16, 18; and April 20, 1871, 17, Stat. 13, ch. 22, §§ 1, 2. In the original statutes this provision was ap-plicable only to the particular rights, privileges and immunities therein mentioned. In the Revised Statutes it stands separate from the other parts of the old acts, and is to be construed ac-cordingly, but with reference to the general rules of interpre-tation applicable to the revision. We deem it unnecessary to consider now whether it has, in its present form, a more ex-tended meaning than it had originally, because, in our opinion, this is not a case to which it can, in any event, be applied. The alleged right of which these plaintiffs have been deprived is one secured to them, if secured at all, not by the Constitu-tion, but by that principle of general law which requires a common carrier of goods for hire to carry, whenever he is asked to do so, within the general scope of his professed business, and for a reasonable reward. It grows out of the duty which in law a common carrier owes to the public at large, and is no more secured by the Constitution than are any other of the ordinary transactions of business. Whether the railroad com-pany is excused from the performance of that duty by the stat-ute on which it relies may depend on the Constitution. If the statute is constitutional, the plaintiffs are deprived of the right which they would otherwise have had in law, but if not, the railway company must carry for them. This, not because the Constitution requires it, but because the statute does not fur-nish a sufficient excuse for not carrying. The question is not, therefore, whether the plaintiffs have been deprived of a right which the Constitution has secured to them, but whether a right existing without the Constitution, has been lawfully taken away. The case may be one arising under the Constitution, within the meaning of that term, as used in other statutes, but

it is not one brought on account of the deprivation of a right, privilege or immunity secured by the Constitution, within the meaning of this provision.

The writ of error is

*Dismissed for want of jurisdiction.*