257 F.2d 45
 COLUMBIA PICTURES CORPORATION, Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
TWENTIETH CENTURY-FOX FILM CORPORATION, Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
WARNER BROS. PICTURES DISTRIBUTING CORP., Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
RKO TELERADIO PICTURES, Inc., Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
UNIVERSAL FILM EXCHANGES, Inc., Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
LOEW'S INCORPORATED, Plaintiff-Appellant,
v.
Sheldon M. GRENGS et al., Defendants-Appellees.
 Nos. 12210-12215.
 United States Court of Appeals Seventh Circuit.
 June 23, 1958.
 
 Philip Neville, and Neville, Johnson & Thompson, Minneapolis, Minn., R. A. Crawford, and Crawford, Crawford & Cirilli, Superior, Wis., John F. Whicher, New York City, and Sargoy & Stein, New York City, for plaintiffs-appellants.
 Louis B. Schwartz, Samuel P. Halpern, Minneapolis, Minn., for appellees.
 Before FINNEGAN, SCHNACKENBERG, and PARKINSON, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Each of the six motion picture distributors, involved in this appeal, commenced these diversity of citizenship cases against defendant motion picture exhibitors to recover actual and punitive damages claimed to have been occasioned by a conspiracy to defraud each plaintiff, respectively, in which the defendants named in each case were charged with having participated. The bare bones of plaintiff's allegations can be reported beginning with the statement that during the period March 1, 1947 to April 16, 1954, plaintiff had licensed the exhibition of numerous motion pictures at defendants' theaters, under its copyrights. A number of such motion pictures were licensed for fees and the amount of which was measured, in whole or in part, by a specified percentage of the box-office receipts from sales of admissions to each respective motion picture exhibition thus licensed. Defendants, pursuant to a fraudulent scheme initiated at the Hollywood Theater and expanded to the other controlled theaters as they were opened, falsely and fraudulently underreported to plaintiffs the box-office receipts of its percentage pictures exhibited at defendants' theaters. Plaintiffs claim that it relied on such false reports to its damage by billing defendants for, and accepting from them payments of, lower exhibition license fees, or "film rentals," on the percentage pictures thus falsely underreported by defendants. The underreporting is claimed to have been carried out deliberately, with wanton disregard of plaintiffs' rights, and with intent to deceive, justifying assessment of punitive damages.
 
 
 2
 While actual and punitive damages in excess of the jurisdictional minimum amount were twice alleged, in the original complaint, to be recoverable, plaintiffs pleaded inability to compute the exact amount of its actual damages, declaring that:
 
 
 3
 "The exact total amount of gross box office receipts actually derived from the exhibition of each of said pictures is at this time not known to the plaintiff and is peculiarly within the knowledge of defendants. Plaintiff is therefore unable at this time to state the exact amount of damages which it sustained as alleged * * *"
 
 
 4
 Allegations were made in the initial complaints to the effect "that the damages to which plaintiff is entitled * * * are in excess of $3000.00 exclusive of interest and costs." After some preliminary skirmishing by counsel, and a flurry of affidavits concerning an audit undertaken by and for plaintiffs and partially completed of defendants' records, the district judge denied a defense motion to dismiss the complaints based on challenges to the jurisdictional amounts. Subsequently, and after several affidavits pertaining to the jurisdictional amount were filed, the district court sustained defendant's motions and the complaints were dismissed, without opinion, on the ground that the amount in controversy is less than the required amount, and plaintiff distributors appealed. The matters in dispute are separate and distinct as to each plaintiff and they do not rely on aggregating their claims to reach the statutory figure. All six actions are substantially the same; this jurisdictional question is common to all, and the causes were consolidated for trial below and we authorized the filing of consolidated briefs and appendices.
 
 
 5
 We think this record shows the essential requisites of jurisdiction of the district court because "the matter in controversy exceeds the sum or value of $3000 exclusive of interest and costs, and is between: (1) Citizens of different States * * *" 28 U.S.C. § 1332(a). There is ample support, by way of affidavits among other things, for plaintiffs' allegations as to the jurisdictional amount. "In a diversity litigation the value of the `matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation * * *" Thomson v. Gaskill, 1942, 315 U.S. 442, 447, 62 S.Ct. 673, 675, 86 L.Ed. 951. Obviously sham allegations and mere pretense should be penetrated when challenged, but the plaintiff need not twice establish his proof of value — once before trial on the merits and later on the merits when issues are joined under complaint and answer. Mere pretense of the disputed amount is one extreme in contrast with a jurisdictional claim appearing to be made in good faith. Bowman v. Chicago & Northwestern Railway Co., 1885, 115 U.S. 611, 6 S.Ct. 192, 29 L. Ed. 502. This means that there is a difference between creating jurisdiction and showing existence of jurisdiction. Though written in a removal case, the opinion by Mr. Justice Roberts, reported as St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 288, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 contains several relevant benchmarks: "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (Footnote of the court omitted.)
 
 
 6
 There is nothing persuasive in this record reflecting upon the plaintiff's good faith in bringing these actions. Smithers v. Smith, 1907, 204 U.S. 632, 27 S.Ct. 297, 51 L.Ed. 656. See also Columbia Pictures Corporation v. Rogers, D.C. W.Va.1949, 81 F.Supp. 580. That punitive damages under Wisconsin law is apparently a debatable question fails in cutting ground from under plaintiffs' pleadings. Calhoun v. Kentucky-West Virginia Gas Co., 6 Cir., 1948, 166 F.2d 530.
 
 
 7
 Defendants' arguments are singularly unimpressive and none of the points presented require extended refutation for it cannot be said, on this record, that plaintiffs' jurisdictional claims are "plainly unsubstantial." There was enough of a showing made before the district judge the first time he denied the jurisdictional motion, manifesting merit in plaintiffs' position and, it continued, despite the view insisted upon by defendants. There simply is an inadequacy of evidence indicative of bad faith in plaintiffs' jurisdictional claim.
 
 
 8
 Some language wrested from context, and outside the facts, reported in our opinion as Seslar v. Union Local 901, Inc., 7 Cir., 1950, 186 F.2d 403, 30 A.L.R.2d 593, is unavailing to defendant.
 
 
 9
 These appealed judgments are reversed and Causes Nos. 12210, 12211, 12212, 12213, 12214 and 12215 are remanded to the district court for trial on the merits.
 
 
 10
 Reversed and remanded.
 
 
 11
 SCHNACKENBERG, Circuit Judge.
 
 
 12
 I concur in the result reached in Judge FINNEGAN'S opinion, but not with all that is said therein. See Seagram-Distillers Corp. v. New Cut Rate Liquors, 7 Cir., 245 F.2d 453, 455; Calvert Distillers Co. v. Wish, 7 Cir., 259 F.2d 323; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L. Ed. 1135, and KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L. Ed. 183.